# EXHIBIT D

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

SHANTE REESE,

         Plaintiff,                             CASE NO.: 1:23-cv-24670-JAL

   v.

ALORICA, INC.,

         Defendant.

_____/

**EXHIBIT D - PLAINTIFF'S LIST OF AUTHORITIES**

Plaintiff, SHANTE REESE ("Plaintiff"), by and through her undersigned counsel, hereby submits her List of Authorities in support of her position with copies attached, marked as Exhibit D.

   Dated:  Miami, Florida                **DEREK SMITH LAW GROUP, PLLC**
           June 11, 2024,             *Counsel for Plaintiff*

                                    */s/ Kyle T. MacDonald*
                                    Kyle T. MacDonald, Esq.
                                    Florida Bar No.: 1038749
                                    Derek Smith Law Group, PLLC
                                    520 Brickell Key Drive, Suite O-301
                                    Miami, FL 33131
                                    Tel: (305) 946-1884
                                    Fax: (305) 503-6741
                                    Kyle@dereksmithlaw.com

## <u>PLAINTIFF'S LIST OF AUTHORITIES</u>

*Kleiman v. Wright*,
2020 U.S. Dist. LEXIS 4241 (S.D. Fla. Jan. 10, 2020)...……………………..…..…..……...D-1

*B&D Nutritional Ingredients, Inc. v. Unique Bio Ingredients, LLC*,
2017 U.S. Dist. LEXIS 20014 (S.D. Fla. Feb. 13, 2017)...……………………..…..…..……...D-2

*Tr Reddy v. Bisaria*,
2011 U.S. Dist. LEXIS 168807 (S.D. Fla. July 27, 2011)...……………//……..…..…..……...D-3

*[This Space Intentionally Left Blank]*

## *Kleiman v. Wright*

United States District Court for the Southern District of Florida

January 10, 2020, Decided; January 10, 2020, Entered on Docket

Case No. 18-cv-80176-BLOOM/Reinhart

**Reporter**
2020 U.S. Dist. LEXIS 4241 *; 2020 WL 113396

IRA KLEIMAN, et al., Plaintiffs, v. CRAIG WRIGHT, Defendant.

**Prior History:** *Kleiman v. Wright, 2019 U.S. Dist. LEXIS 147712, 2019 WL 4023392 (S.D. Fla., Aug. 27, 2019)*

## Core Terms

bitcoin, discovery, sanctions, affirmative defense, Holdings, motion to compel, partnership, documents, encrypted, public address, argues, blind trust, parties, orders, attorney's fees, proceedings, trusts, imposition of sanctions, evidentiary hearing, discovery order, judge's order, contempt, agrees, sworn declaration, district court, transferred, burdensome, compliance, deposition

## Case Summary

**Overview**
HOLDINGS: [1]-In a civil action, where the plaintiffs sought to identify the cryptocurrency owned and controlled by the defendant, the court found that attorneys' fees were warranted under Fed. R. Civ. P. 37(a)(5) because the defendant willfully obstructed the discovery process when he chose not to notify the court or the parties of the fact that he knew it was impossible to comply with the court's discovery order.

**Outcome**
Order affirmed in part and reversed in part.

## LexisNexis® Headnotes

Civil Procedure > Appeals > Standards of Review > Abuse of Discretion

Civil Procedure > Judicial

Officers > Magistrates > Objections

Civil Procedure > Judicial
Officers > Magistrates > Pretrial Referrals

Civil Procedure > Judicial
Officers > Magistrates > Standards of Review

**HN1**[ ] **Standards of Review, Abuse of Discretion**

Fed. R. Civ. P. 72(a) provides that upon the filing of objections to a magistrate judge's order regarding a non-dispositive matter, a district judge to whom the case is assigned shall consider such objections and modify or set aside any portion of the order found to be clearly erroneous or contrary to law. This is an extremely deferential standard of review, and this high bar is rarely invoked. The magistrate judge's orders should not be disturbed absent a clear abuse of discretion that leaves a reviewing court with the definite and firm conviction that a mistake has been committed.

Civil Procedure > Judicial
Officers > Judges > Discretionary Powers

Governments > Courts > Authority to Adjudicate

**HN2**[ ] **Judges, Discretionary Powers**

A court has the inherent power to regulate litigation and sanction the parties for abusive practices. The court's authority to impose sanctions must, however, be exercised with restraint and discretion.

Civil Procedure > Discovery & Disclosure > Discovery > Misconduct During Discovery

Civil Procedure > Discovery & Disclosure > Disclosure > Sanctions

2020 U.S. Dist. LEXIS 4241, *4241

Civil Procedure > Discovery & Disclosure > Disclosure > Motions to Compel

*HN3*[🔻] **Discovery, Misconduct During Discovery**

Fed. R. Civ. P. 37 authorizes a court to award attorneys' fees against a party and/or the party's counsel as a sanction for certain discovery-related conduct. Thus, when a party refuses to participate in discovery, the court may issue an order compelling the party to disclose. Fed. R. Civ. P. 37(a). If a party then disobeys the court's order, more severe sanctions are available. Fed. R. Civ. P. 37(b)(2).

Civil Procedure > Judicial Officers > Judges > Discretionary Powers

Civil Procedure > Discovery & Disclosure > Discovery > Misconduct During Discovery

*HN4*[🔻] **Judges, Discretionary Powers**

The sanctions for refusal to participate in discovery are intended to 1) compensate a court and parties for the added expenses caused by discovery abuses, 2) compel discovery, 3) deter others from engaging in similar conduct, and 4) penalize the offending party or attorney. District courts possess wide discretion over the discovery process and when discovery sanctions are appropriate.

Civil Procedure > Discovery & Disclosure > Discovery > Misconduct During Discovery

*HN5*[🔻] **Discovery, Misconduct During Discovery**

The severe sanctions permitted by Fed. R. Civ. P. 37(b) are usually only imposed by district courts upon a finding (1) that a party's failure to comply with an order was willful or a result of bad faith, (2) the party seeking sanctions was prejudiced by the violation, and (3) a lesser sanction would fail to adequately punish and be inadequate to ensure compliance with court orders.

Civil Procedure > Judicial Officers > Magistrates > Pretrial Referrals

*HN6*[🔻] **Magistrates, Pretrial Referrals**

A court is not required to rehear witness testimony in accepting a magistrate judge's credibility findings.

Civil Procedure > Discovery & Disclosure > Discovery > Misconduct During Discovery

Civil Procedure > Discovery & Disclosure > Disclosure > Sanctions

*HN7*[🔻] **Discovery, Misconduct During Discovery**

Pursuant to Fed. R. Civ. P. 37(c), a court may award sanctions where a party fails to disclosure or supplement an earlier response given throughout the discovery process.

Civil Procedure > ... > Summary Judgment > Opposing Materials > Motions for Additional Discovery

*HN8*[🔻] **Opposing Materials, Motions for Additional Discovery**

Fed. R. Civ. P. 34(b)(2)(C) requires that objections to discovery specifically state the basis that the discovery is being withheld. Under Fed. R. Civ. P. 34(b)(2)(C), an objection must state whether any responsive materials are being withheld on the basis of that objection. An objection to part of a request must specify the part and permit inspection of the rest. Further, it is possible for an objection to be waived if it is not timely raised by the party withholding the discovery.

Civil Procedure > Judicial Officers > Judges > Discretionary Powers

Constitutional Law > ... > Fundamental Rights > Procedural Due Process > Scope of Protection

*HN9*[🔻] **Judges, Discretionary Powers**

The broad discretion of a district court to manage its affairs is governed by the most fundamental safeguard of fairness: the Due Process Clause of the Fifth Amendment. To comply with the Due Process Clause, a

court must impose sanctions that are both just and specifically related to a particular claim which was at issue in the order to provide discovery.

Civil Procedure > Discovery & Disclosure > Discovery > Misconduct During Discovery

[HN10[⬇]] **Discovery, Misconduct During Discovery**

Sanctions permitted by Fed. R. Civ. P. 37(b) are usually only imposed when a party seeking sanctions was prejudiced by a violation.

**Counsel:** **[*1]** For Ira Kleiman, as the Personal Representative of the Estate of David Kleiman, Plaintiff: Devin Freedman, LEAD ATTORNEY, Roche Freedman LLP, Miami, FL; Joseph M. Delich, LEAD ATTORNEY, PRO HAC VICE, Roche Freedman LLP, Brooklyn, NY; Kyle Roche, LEAD ATTORNEY, Roche Freedman LLP, Brooklyn, NY; Maxwell V. Pritt, LEAD ATTORNEY, PRO HAC VICE, Boies Schiller Flexner LLP, San Francisco, CA; Andrew Scott Brenner, Stephen N. Zack, Boies Schiller & Flexner, Miami, FL.

For W&K Info Defense Research, LLC, Plaintiff: Joseph M. Delich, LEAD ATTORNEY, PRO HAC VICE, Roche Freedman LLP, Brooklyn, NY; Maxwell V. Pritt, LEAD ATTORNEY, PRO HAC VICE, Boies Schiller Flexner LLP, San Francisco, CA; Andrew Scott Brenner, Stephen N. Zack, Boies Schiller & Flexner, Miami, FL; Devin Freedman, Roche Freedman LLP, Miami, FL.

For Craig Wright, Defendant: Andres Rivero, LEAD ATTORNEY, Alan H. Rolnick, Amanda Marie McGovern, Schneur Zalman Kass, Rivero Mestre LLP, Coral Gables, FL; Bryan Lee Paschal, Rivero Mestre LLP, Miami, FL; Zaharah R. Markoe, Rivero Mestre LLP, Miami, Miami, FL.

**Judges:** BETH BLOOM, UNITED STATES DISTRICT JUDGE.

**Opinion by:** BETH BLOOM

# Opinion

**ORDER**

**THIS CAUSE** is before the Court upon Defendant Craig Wright's Objection to Magistrate **[*2]** Order "Deeming" Certain Facts Established and "Striking" Certain Affirmative Defenses (the "Objection"). *See* ECF No. [311]. The Court has reviewed the Objection, the opposing and supporting submissions, the record and applicable law, and is otherwise fully advised. For the reasons that follow, Defendant's Objection is sustained in part and overruled in part. The Magistrate Judge's Order, ECF No. [277], is vacated in part.

## I. BACKGROUND

The factual background giving rise to this action has been set forth previously in prior opinions issued by this Court and are incorporated by reference. *See e.g.* ECF No. [68].

Pursuant to *28 U.S.C. § 636* and this District's Magistrate Judge Rules, all discovery matters in this action were previously referred to the Honorable Bruce E. Reinhart. *See* ECF No. [21]. The proceedings relevant to the present appeal relate to a discovery dispute, initiated when the Plaintiffs sought to identify the bitcoin owned and controlled by the Defendant (herein referred to as Defendant's "Bitcoin Holdings"), and are as follows:

### a. Plaintiffs' First Set of Interrogatories

On July 31, 2018, Plaintiffs served their First Set of Interrogatories, requesting Defendant identify the "public keys **[*3]** and public addresses" for any cryptocurrency he currently or previously owned. ECF No. [91-2], at 8. Defendant objected to the discovery request as "irrelevant, grossly overbroad, unduly burdensome, harassing and oppressive, and not proportional to the needs of the case." ECF No. [91-2], at 14-19. The Defendant, however, did not object in his discovery responses that the information sought was impossible to produce. *See generally* ECF No. [91-2].

A discovery hearing to resolve these respective objections was scheduled before Judge Reinhart on February 20, 2019. ECF No. [90]. In the parties' Joint Discovery Memorandum, Defendant argued that the Plaintiffs' requests were disproportionate to the needs of the case because they sought all documents relating to any bitcoin transactions by him between 2009 and 2014. ECF No. [92], at 3-4. The Defendant represented, however, that he "stands ready to produce documents in his possession, custody, or control that relate to David [Kleiman], any trust in which David [Kleiman] was a trustee or beneficiary, and W&K Info Defense Research,

LLC." *Id.* At the hearing, the Court directed the Plaintiffs to identify the starting date and seek production of **[\*4]** Defendant's Bitcoin Holdings on that date, and then use the Bitcoin evidence trail to trace forward from there. ECF No. [123], at 120-123. The Defendant did not object in his discovery responses that the information sought was impossible to produce.

### b. Plaintiffs' Second Set of Requests for Production

On January 17, 2019, Plaintiffs served a Second Set of Requests for Production on Defendant. ECF No. [92-5], at 13-30. In Request No. 1 of the Second Set of Requests for Production (herein referred to as "Request No. 1") Plaintiffs sought "[a]ll documents or communications that provide and/or estimate the value of your cryptocurrency holdings. This includes, but is not limited to, loan applications, financial statements, tax returns, life insurance applications, financing agreements, sale papers, assignment contracts, etc." ECF No. [92-5], at 18. Defendant objected to Request No. 1 on relevance, over-breadth, harassment, and disproportionality grounds. ECF No. [114-1], at 5-7. Defendant again did not object in his discovery responses that the information sought was impossible to produce. *See generally id.*

Another discovery hearing was thereafter scheduled. ECF No. [104]. In the parties' **[\*5]** prehearing Joint Discovery Memorandum, they indicated that Request No. 1 was still in dispute. ECF No. [109], at 7. The discovery hearing was held on March 6, 2019. ECF Nos. [110], [122]. At the hearing, the parties deferred the issues surrounding Request No. 1 to the next discovery hearing after the Plaintiffs represented that they were revising the scope of time referenced in Request No. 1. ECF No. [122], at 56-62. Defendant again did not argue that the information sought was impossible to produce. The Court scheduled another discovery hearing for March 14, 2019.

### c. The March 14, 2019 Discovery Hearing

In the Joint Discovery Memorandum for the March 14 discovery hearing, Plaintiffs represented that they had limited Request No. 1 to "produce any documents that existed as of 12/31/13 which estimate the value of Defendant's bitcoin holdings," arguing that such information was relevant to trace the assets of the alleged partnership between David Kleiman and Defendant. ECF No. [114], at 3. Defendant argued that the request was still "overly broad, unduly burdensome and harassing by seeking such personal financial information such as loan applications, financial statements, tax returns, **[\*6]** life insurance applications, etc." *Id.* The Defendant did not object, however, that the discovery was impossible to produce. *See generally id.*

At the hearing the Plaintiffs argued that the information sought in Request No. 1 was necessary to establish the universe of bitcoin that was mined during the alleged partnership between David Kleiman and Defendant. ECF No. [124], at 18-19. Plaintiffs ultimately agreed that what they were seeking was "a listing of all the bitcoin that was owned [by Dr. Wright directly or indirectly] on December 31, 2013." *Id.* at 20:21-25. Plaintiff reiterated that "it's just an attempt to find the partnership's assets." *Id.* at 19:7-8. At the hearing, the Defendant conceded that the information sought was relevant, but objected to its production on the basis of proportionality and potential undue burden. *Id.* at 21:6-10.

At that time, Defendant admitted that a list of public addresses would "identify Craig Wright as being the owner of those addresses, which sort of like opens the door to, you know, a lot of financial information, and without any evidence that all of those — or what portion of those David Kleiman had an interest in." *Id.* at 21:17-22. Based on this **[\*7]** representation, the Court ruled that Plaintiffs were entitled to a list of Defendant's bitcoin holdings, but granted Defendant leave to file a motion for protective order based on undue burden. *Id.* at 22-23. At this hearing, the Defendant did not argue that the information sought was impossible to produce.

### d. Defendant's April 4, 2019 Deposition

The Defendant was deposed on April 4, 2019. During his deposition, he testified that a trust called the Tulip Trust was formalized in 2011 ("Tulip Trust I"), but that Tulip Trust I never owned or possessed private keys to bitcoin addresses. ECF No. [270-1], at 22. Defendant also refused to answer questions about how much bitcoin he mined in 2009-2010. The parties raised this issue with Judge Reinhart, who deferred ruling on the issue. ECF No. [137], at ¶ 1 ("The request to compel Dr. Wright to disclose the amount of bitcoin he mined during 2009 and 2010 is denied without prejudice. The Court will revisit this issue after the parties brief whether production of a list of Dr. Wright's bitcoin ownership would be unduly burdensome.").

2020 U.S. Dist. LEXIS 4241, *7

*e. April 11, 2019 Discovery Hearing*

Another discovery hearing was held on April 11, 2019. ECF No. [142]. During this hearing, Judge **[*8]** Reinhart required the Defendant file a motion for protective order regarding Plaintiffs' request for a list of his Bitcoin Holdings no later than April 19, 2019. ECF No. [146], at 38-39.

Pursuant to the Magistrate Judge's instructions, the Defendant timely filed a sealed motion. ECF No. [155]. In that Motion, the Defendant represented that he did "not have a complete list of the public addresses that he owned as of any date." *Id.* at 1. He also argued that the creation of such a list would be unduly burdensome. *Id.* Beyond identifying himself as the miner for the first 70 blocks of the bitcoin blockchain, and providing the public addresses for those blocks, the Defendant also claimed that he did not know any other bitcoin public addresses. *Id.* The Defendant represented that in 2011, he transferred ownership of all of his Bitcoin into a blind trust, of which he was not a trustee or a beneficiary. *Id.* at 2. Defendant also claimed that he did not "know any of the public addresses which hold any of the bitcoin in the blind trust . . . and cannot provide any other public addresses." *Id.* Thus, Defendant maintained that as of December 31, 2013, all of his bitcoin had already been transferred into the blind **[*9]** trust, and therefore are owned by the trusts, not the Defendant himself. *Id.*

Judge Reinhart denied the Defendant's Motion, finding Defendant's assertion that the production of a complete list of his public addresses he owned as of December 31, 2013 was unduly burdensome to be unsupported by the facts. ECF No. [166], at 2. The Court further stated that the Defendant "does not argue undue burden, he argues impossibility," and noted that "[t]he argument that Dr. Wright is incapable of providing an accurate listing of his current or historical bitcoin holdings was never presented in any of the prior hearings before this Court." *Id.* at 2-3.

Judge Reinhart then ordered the Defendant provide (1) a sworn declaration identifying the name and location of the blind trust, the name and contact information for the current trustee and any past trustees and the names and contact information of any current or past beneficiaries; (2) a copy of any and all documents relating to the formation, administration, and operation of the blind trust, accompanied by a sworn declaration of authenticity; (3) all transactional records of the blind trust, including but not limited to any records reflecting the transfer of bitcoin **[*10]** into the blind trust in or

about 2011, accompanied by a sworn declaration of authenticity; and (4) ordered the Defendant execute any and all documents, or other legal process, necessary to effectuate the release of documents in the possession, custody, or control of the trustee. *Id.* at 4.

In his attempts to comply with Judge Reinhart's Order, the Defendant provided a sworn declaration, in which he stated that he had met with his counsel and provided them "with additional details and clarity regarding trusts that I settled that hold or held Bitcoin that I mined or acquired on or before December 31, 2013." ECF No. [222], at ¶ 3. Defendant further affirmed that he had mined bitcoin in 2009 and 2010 directly into a trust in Panama, that there were no transactions related to that bitcoin, and that he later "transferred the encrypted files that control access to these Bitcoin in 2011, as explained below." *Id.* ¶ 4. In June 2011, the Defendant represented that he consolidated "the Bitcoin [] mined with Bitcoin that [he] acquired and other assets." *Id.* ¶ 5. Defendant claims that "[i]n October 2012, a formal trust document was executed, creating a trust whose corpus included the Bitcoin that [he] mined, **[*11]** acquired and would acquire in the future. The name of that trust is Tulip Trust. It was formed in the Seycelles [sic]." *Id.* Defendant then identified the trustees of Tulip Trust I as (1) COIN Ltd. UK,[1] (2) Uyen Nguyen, (3) Dr. Wright, (4) David Kleiman, (5) Panopticrypt Pty. Ltd,[2] and (7) Savannah Ltd.[3]*Id.* ¶ 6. Dr. Wright is the contact person for CO1N Ltd. UK. The contact person for Panopticript Pty. Ltd. is Defendant's wife. The contact person for Savannah Ltd. is Denis Mayaka. *Id.* ¶¶ 9-12. Defendant further affirmed that the beneficiaries of Tulip Trust I are Wright International Investments Ltd. and Tulip Trading Ltd. Defendant is the point of contact for both of the beneficiaries. *Id.* ¶¶ 13-14. Defendant then asserted for the first time that "[a]ccess to the encrypted file that contains the public addresses and their associated private keys to the Bitcoin [] mined, requires myself and a combination of trustees referenced in Tulip Trust I to unlock based on a Shamir scheme." *Id.* at ¶ 23.

The Defendant's affidavit also outlined the structure of the second Tulip Trust ("Tulip Trust II"). Defendant admitted that he and his current wife are the beneficiaries to Tulip Trust II. *Id.* at ¶¶ **[*12]** 19-20. At that time, Defendant provided a limited number of

---

[1] Dr. Wright is the contact person for CO1N Ltd. UK.

[2] The contact person for Panoptycript Pty. Ltd. is Dr. Wright's wife.

[3] The contact person for Savannah Ltd. is Denis Mayaka.

documents related to the trust. According to the Plaintiffs, Defendant "produced two sworn statements, copies of various trust instruments, and a statement from the purported trustee re-attaching a trust instrument." ECF No. [210], at 3. The documents, however, apparently did not identify the specific bitcoin that were transferred into the blind trusts, nor did they indicate what the blind trusts have done with the bitcoin since their transfer. *Id.* Defendant claimed that he "produced trust formation documents along with a sworn declaration of authenticity," as well as "documents reflecting the use of bitcoin rights from the trust to support research and development by his Australian entities." ECF No. [211], at 3. Defendant did not produce any documents related to the administration and operation of the blind trust as ordered by the Court. *See* ECF No. [166]; ECF No. [197] at 4, fn 1.

### f. Plaintiffs' Motion to Compel

On June 3, 2019, Plaintiffs filed a Motion to Compel Defendant to Comply with this Court's Orders Directing Him to Produce a List of the Bitcoins He Held as of December 31, 2013. ECF No. [197] (the "Motion to Compel"). **[*13]** In the Motion to Compel, Plaintiffs sought an order from the Court imposing sanctions under *Federal Rule of Civil Procedure 37*, and to order the Defendant to provide a sworn statement identifying the public addresses of the bitcoin transferred into the Tulip Trusts, to provide transactional records and communications relating to the trusts, and to sit for a renewed deposition. *Id.* at 6. Plaintiffs specifically requested that should the Defendant continue to refuse to comply with the Court's Orders, that the Court deem all of Dr. Wright's holdings in the Tulip Trust to be joint property belonging to both the Defendant and David Kleiman. ECF No. [210], at 6.

In his Response in Opposition to the Motion to Compel, Defendant conceded that he did not comply with the Court's Order. ECF No. [204]. However, for the first time, Defendant argued in these discovery proceedings that compliance with the Court's Order was "impossible." ECF No. [204]. Moreover, in this Response, Defendant claimed that information necessary to comply with the Court's Order was in Tulip Trust I in an encrypted file protected by a "Shamir's Secret Sharing Algorithm."[4] ECF No. [204], at 5.

Defendant then represented that he could not decrypt the "outer level of **[*14]** encryption" because he did not have all of the necessary keys, and represented that the encryption keys needed were "distributed to multiple individuals through the [blind] trusts" and "he alone does not have ability to access the encrypted file and data contained in it." *Id.*

A held was hearing on June 11, 2019 on the Motion to Compel. ECF No. [221]. At the hearing, Plaintiffs' counsel presented the Court with the Defendant's earlier deposition where he denied ever putting bitcoin into a trust and denied putting any private keys into the Tulip Trust, which was contrary to the position the Defendant was now taking in his Opposition to the Motion to Compel. ECF No. [221], at 8-9. The Court once again gave the Defendant an opportunity to "produce a complete list of all bitcoin that he mined prior to December 31, 2013," and entered an Order to Show Cause why it should not certify a contempt of court to the District Judge. ECF No. [217]. An evidentiary hearing was scheduled for June 28, 2019.

### g. Evidentiary Hearing

On June 28, 2019, a two-day evidentiary hearing began before Magistrate Judge Reinhart. The Court heard from three witnesses (1) the Defendant, (2) Steven Coughlan a/k/a Steve Shadders, **[*15]** and (3) Dr. Matthew Edman. ECF Nos. [236], [264]. Plaintiffs also submitted excerpts from the depositions of Jonathan Warren and Dr. Wright. ECF Nos. [261], [270]. The Magistrate Judge also heard oral argument on August 26, 2019.

During the Defendant's testimony, the Defendant testified that it was impossible to comply with the Court's Orders regarding his Bitcoin Holdings due to the Shamir Scheme implemented related to the encrypted file. Defendant also claimed that he enlisted the now deceased David Kleiman to implement and carry out these safeguards. ECF No. [236], at 125:15-126:23. He testified that to decrypt the outer most layer of the encryption he needed eight "key slices," of which he presently only has seven in his possession. *Id.* at 125. It was the Defendant's position that he simply could not produce a list of his Bitcoin Holdings even if he wanted to. *Id.* at 14:8-14. Judge Reinhart did not find the Defendant's testimony to be credible, and his testimony and demeanor did not impress Judge Reinhart as someone who was "telling the truth." ECF No. [277], at 19.

Steven Coughlan a/k/a Steve Shadders ("Shadders")

---

[4] An algorithm created by Adi Shamir to divide a secret, such as a private encryption key, into multiple parts. ECF No. [277], at 10.

testified as to his effort to apply the filter criteria to identify the Defendant's [*16] Bitcoin Holdings. Judge Reinhart found Shadders' testimony to be credible and worthy of belief. ECF No. [277], at 18. Judge Reinhart found that employing Shadders to identify the Bitcoin Holdings demonstrated a "good faith attempt" by the Defendant to comply with the Court's Order. However, Judge Reinhart found that this finding warranted little weight in light of the Defendant's conduct. *Id.* Finally, Matthew Edman testified about alleged alterations in the documents produced by the Defendant during discovery.

### h. The Order on the Motion to Compel

On August 27, 2019, Judge Reinhart issued his Order on Plaintiffs' Motion to Compel, ECF No. [277] (the "Order"). In the Order, he found that the Defendant had not met his burden of proving by a preponderance of the evidence that he was unable to comply with the Court's Order, and thus *Rule 37* sanctions were warranted.[5] As one of those sanctions, the Magistrate Judge held that for the purposes of this action the following facts were deemed established:

(1) Dr. Wright and David Kleiman entered into a 50/50 partnership to develop Bitcoin intellectual property and to mine bitcoin;

(2) any Bitcoin-related intellectual property developed by Dr. Wright prior [*17] to David Kleiman's death was property of the partnership;
(3) all bitcoin mined by Dr. Wright prior to David Kleiman's death ("the partnership's bitcoin") was property of the partnership when mined; and
(4) Plaintiffs presently retain an ownership interest in the partnership's bitcoin, and any assets traceable to them.

ECF No. [277], at 16 (herein referred to as the "Deemed Facts"). The Magistrate Judge also struck several of the

---

[5] The Court notes that although the Defendant was ordered to produce all documents related to the blind trust by May 9, 2019, ECF No. [166], the Defendant had still failed to timely produce all documents that he had in his possession as of the evidentiary hearing date. In fact, as late as January 6, 2020, it was the Plaintiff who advised the Court that the Defendant produced another document purportedly related to the blind trusts. ECF No. [369]. Plaintiffs advise that the Defendant has not provided any explanation as to the document's late disclosure. ECF No. [367]. At the status conference on January 9, 2020, Plaintiffs also called into question the document's authenticity.

Defendant's affirmative defenses, including: Third Affirmative Defense (Good Faith); Fourth Affirmative Defense (Accord and Satisfaction); Fifth Affirmative Defense (Release); Sixth Affirmative Defense (Payment); Seventh Affirmative Defense (Set-off); Eighth Affirmative Defense (Failure to Mitigate Damages); Seventh [*sic*] Affirmative Defense (Waiver); and Tenth Affirmative Defense (Statute of Frauds). *Id.* (collectively referred to as the "Affirmative Defenses").

While Judge Reinhart found that there was clear and convincing evidence that would support a civil contempt certification, he determined that the sanctions imposed pursuant to *Rule 37* and referenced above, were sufficient to sanction the Defendant for his conduct. *Id.* at 16. In exercising his discretion, Judge Reinhart, [*18] therefore, did not certify facts to this Court for civil contempt proceedings. *Id.* The Magistrate Judge also noted that while he found that the record evidence could support a civil contempt certification, he did not find the record evidence rose to the level of proof beyond a reasonable doubt needed to support a certification of facts for criminal contempt proceedings. *Id.* Judge Reinhart also awarded the Plaintiffs attorneys' fees associated with bringing the Motion to Compel. *Id.* at 28.

Defendant now appeals the Magistrate Judge's Order, arguing that there is "no basis" to impose any sanctions on the Defendant because his "uncontroverted" testimony evidences that he is unable to access the information sought by the Plaintiffs. *See generally* ECF No. [311]. Defendant characterizes the sanctions imposed by Judge Reinhart as "draconian" and argues that their imposition would violate his due process rights. *Id.* Finally, the Defendant argues that the factual findings made by the Magistrate Judge went far beyond the limited discovery issue that was before the Court.

## II. STANDARD OF REVIEW

*HN1*[↑] *Federal Rule of Civil Procedure 72(a)* provides that upon the filing of objections to a magistrate judge's order regarding a non-dispositive [*19] matter, the district judge to whom the case is assigned shall consider such objections and modify or set aside any portion of the order found to be clearly erroneous or contrary to law. This is an extremely deferential standard of review, and this "high bar" is "rarely invoked." *Cox Enters., Inc. v. News-Journal Corp., 794 F.3d 1259, 1272 (11th Cir. 2015)*. The magistrate judge's orders should not be disturbed absent a clear abuse of discretion that leaves the reviewing court with

2020 U.S. Dist. LEXIS 4241, *19

the "definite and firm conviction that a mistake has been committed." *Linea Naviera de Cabotaje C.A. v. Mar Caribe de NevaGacion, C.A., 169 F. Supp. 2d 1341, 1355 (11th Cir. 2001)*.

## III. DISCUSSION

In his Objection, the Defendant argues that there was no basis for the Magistrate's imposition of sanctions, and further that their imposition would violate his due process rights. *See generally id.* Defendant also contends that the Deemed Facts went far beyond the limited discovery issue before the Court. *See generally id.* Thus, the Defendant seeks an order from this Court reversing and vacating Judge Reinhart's Order. *Id.* Plaintiffs oppose the relief sought, claim that the record supports the sanctions imposed in Judge Reinhart's Order and their imposition was well within his discretion and authority. For the reasons that follow, the Defendant's Objection is sustained in part and overruled in part. **[*20]** The Magistrate Judge's Order is vacated in part.

*HN2*[⬆] The Court has the "inherent power to regulate litigation and sanction the parties ... for abusive practices." *Tarasewicz v. Royal Caribbean Cruises, Ltd., Case No. 14-CIV-60885-Bloom/Valle, 2016 U.S. Dist. LEXIS 186120, 2016 WL 3944176, at * 4 (S.D. Fla. Feb. 9, 2016)* (citations omitted) (report and recommendation adopted by *Tarasewicz, 2016 U.S. Dist. LEXIS 186121, 2016 WL 3944178 (S.D. Fla. March 17, 2016)).* The Court's authority to impose sanctions must, however, be "exercised with restraint and discretion." *Sahyers v. Prugh, Holliday & Karatinos, P.L., 560 F.3d 1241, 1244 (11th Cir. 2009)* (citing *Chambers v. NASCO, Inc., 501 U.S. 32, 111 S.Ct. 2123, 2132, 115 L. Ed. 2d 27 (1991)).*

*HN3*[⬆] *Federal Rule of Civil Procedure 37* authorizes the Court to award attorneys' fees against a party and/or the party's counsel as a sanction for certain discovery-related conduct. Thus, when a party refuses to participate in discovery, the court may issue an order compelling the party to disclose. *Fed. R. Civ. P. 37(a).* If a party then disobeys the court's order, more severe sanctions are available. *See Fed. R. Civ. P. 37(b)(2). Federal Rule of Civil Procedure 37(b)(2)* states in relevant part:

(2) Sanctions Sought in the District Where the Action Is Pending. (A) For Not Obeying a Discovery Order. If a party or a party's officer, director, or

managing agent--or a witness designated under *Rule 30(b)(6)* or *31(a)(4)*--fails to obey an order to provide or permit discovery, including an order under *Rule 26(f)*, *35*, or *37(a)*, the court where the action is pending may issue further just **[*21]** orders. They may include the following:

(i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;

(ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;

(iii) striking pleadings in whole or in part;

(iv) staying further proceedings until the order is obeyed;

(v) dismissing the action or proceeding in whole or in part;

(vi) rendering a default judgment against the disobedient party; or

(vii) treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination.

*Fed. R. Civ. P. 37 (b)(2). HN4*[⬆] "These sanctions 'are intended to 1) compensate the court and parties for the added expenses caused by discovery abuses, 2) compel discovery, 3) deter others from engaging in similar conduct, and 4) penalize the offending party or attorney.'" *Thornton v. Hosp. Mgmt. Assocs., Inc., 787 F. App'x 634, 638 (11th Cir. 2019)* (citing *Wouters v. Martin County, 9 F.3d 924, 933 (11th Cir. 1993)).* District courts possess wide discretion over the discovery process and when discovery sanctions are appropriate. *Dude v. Congress Plaza, LLC, 17-80522-CIV, 2018 U.S. Dist. LEXIS 123249, 2018 WL 4203888, at *5 (S.D. Fla. July 20, 2018)*, report and recommendation adopted sub nom. *Dude v. Congress Plaza, LLC, 17-CV-80522, 2018 U.S. Dist. LEXIS 153000, 2018 WL 4203886 (S.D. Fla. Aug. 29, 2018). HN5*[⬆] "The **[*22]** severe sanctions permitted by *Rule 37(b)* are usually only imposed by district courts upon a finding '(1) that the party's failure to comply with the order was willful or a result of bad faith, (2) the party seeking sanctions was prejudiced by the violation, and (3) a lesser sanction would fail to adequately punish and be inadequate to ensure compliance with court orders.'" *Id.* (citations omitted).

### a. The Defendant's Conduct Warrants Sanctions

In his Objection, the Defendant first argues that there is "absolutely no basis" to impose any sanctions on the

Defendant because his "uncontroverted" testimony evidences that he is unable to comply with the Court's Order. ECF No. [311], at 3. The Court first notes the obvious novelty of this argument. Indeed, the Defendant testified that the now deceased David Kleiman was the only person he is aware of who knew who else controlled the Shamir key slices. ECF No. [236], at 126:20-23. Therefore, the only testimony that could conceivably rebut the Defendant's testimony is from one who is deceased. A fact of which the Defendant is fully aware.

Additionally, the sole evidence put forward to establish the Defendant's claim of impossibility, his own testimony, was **[*23]** found not to be credible by Judge Reinhart.[6] *See* ECF No. [277] ("I completely reject Dr. Wright's testimony about the alleged Tulip Trust, the alleged encrypted file, and his inability to identify his bitcoin holdings . . . During his testimony, Dr. Wright's demeanor did not impress me as someone who was telling the truth."). **HN6[↑]** This Court is not required to rehear witness testimony in accepting a Magistrate Judge's credibility findings. *See United States v. Cofield, 272 F.3d 1303, 1305-06 (11th Cir. 2001)* (citing *United States v. Raddatz, 447 U.S. 667, 100 S. Ct. 2406, 65 L. Ed. 2d 424 (1980))*. The Court has also reviewed the transcripts from the Evidentiary Hearing held by Judge Reinhart and agrees with his credibility findings relating to Defendant. Indeed, in answering opposing counsel's questions, the Defendant was evasive, refused to give and interpret words in their very basic meanings, was combative, and became defensive when confronted with previous inconsistencies.[7]

Second, even if the Court believed the Defendant's

---

[6] Defendant also takes issue with the Order's "attack" on his character. In his Objection, the Defendant argues that the Magistrate Judge's character determinations should have no bearing on whether he is able to produce the list of Bitcoin Holdings. ECF No. [311], at 13. As the judge presiding over the Evidentiary Hearing, it was entirely proper for the Court to consider the entire record, the Defendant's prior statements and whether there were any inconsistencies with his present testimony, and the Defendant's conduct in evaluating the Defendant's credibility. Therefore, these determinations by the Magistrate Judge are relevant to the extent that they relate to whether the Magistrate Judge believed the Defendant to be credible.

[7] The Defendant also argues that the Magistrate Judge improperly relied on hearsay evidence in issuing his ruling. ECF No. [311], at 23-25. The Court rejects this argument.

testimony that it is impossible to comply with the Magistrate Judge's Order, he has still failed to satisfy his burden that he has made "in good faith *all* reasonable efforts to comply." *United States v. Rizzo, 539 F.2d 458, 465 (5th Cir. 1976)*. It is undisputed that the Defendant has failed to produce a list of his Bitcoin Holdings and has failed to comply with the **[*24]** Magistrate Judge's discovery order. Therefore, it was the Defendant's burden to introduce evidence not only that it was impossible to comply, but that he had made all reasonable efforts to comply. While the Court notes that the Defendant did present evidence of a single good faith attempt to comply with the Order—his recruitment of Shadders to apply the filter criteria to the public blockchain—such does not demonstrate that the Defendant made *all* reasonable efforts to comply. Indeed, the Defendant admitted during the Evidentiary Hearing that he had not even "looked" at the encrypted file. *See* ECF No. [236], at 124:12-16 ("A. I haven't looked at the file. No one asked me to look at the file. Q. You were ordered to produce the addresses; is that correct? A. Um, yes, but this is not the addresses.").

Notably, the Defendant admitted in his November 25, 2019 Objection that he did not even turn over the encrypted file to the Plaintiffs until August 27, 2019—the day the Magistrate Judge issued his Order on the Motion to Compel. *See* ECF No. [311], at 17. The Defendant cannot in good faith contend that he made all reasonable efforts to comply, where throughout the entirety of these proceedings, **[*25]** he failed to even look at the encrypted file he maintains prohibits his compliance.

Next, the Court notes the obvious. Given the posture and the amount of effort expended by the parties on this discovery issue, even if the Court were to find the Defendant's assertion that the information sought was impossible to obtain, sanctions would still be warranted. Defendant had a continued duty to advise the Court if compliance with its orders was not possible. **HN7[↑]** Pursuant to *Federal Rule of Civil Procedure 37(c)* the Court may award sanctions where a party fails to disclosure or supplement an earlier response given throughout the discovery process. *Rule 37 (c)* states in relevant part:

If a party fails to provide information or identify a witness as required by *Rule 26(a)* or *(e)*, the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless. In addition to or instead of this

sanction, the court, on motion and after giving an opportunity to be heard:

(A) may order payment of the reasonable expenses, including attorney's fees, caused by the failure;

(B) may inform the jury of the party's failure; and

(C) may impose other appropriate sanctions, **[*26]** including any of the orders listed in *Rule 37(b)(2)(A)(i)-(vi)*.

*Fed. R. Civ. P. 37(c)*. *Federal Rule of Civil Procedure 37(c)* "provides the consequences for a party's failure to disclose, pursuant to the requirements of *Rule 26*." *Nance v. Ricoh Elecs., Inc., 381 Fed. Appx. 919, 922 (11th Cir. 2010)*. Because, under *Rule 26(e)(1)(A)*, supplementation of incorrect responses is required, the obligation to supplement pertinent information continues throughout the case.

Here, Plaintiffs first requested that the Defendant identify the public addresses for any of his cryptocurrency in their First Set of Interrogatories served on July 26, 2018. ECF No. [92-2], at 8. ("[i]dentify the . . . public addresses for any cryptocurrency that . . .you possess the private keys to."). The request was later reasserted as Request No. 1 of Plaintiffs' Second Request for Production. ECF No. [92-5], at 18. The Defendant's argument that compliance with the Court's discovery orders was impossible, however, completely ignores the fact that the Defendant did not even raise this issue with the Court until the filing of his Response in Opposition to the Motion to Compel in June 2019. *See* ECF No. [211].[8]

Further, the Defendant explicitly testified at the Evidentiary Hearing that he had been aware that he could not generate the list of Bitcoin Holdings

---

[8] *HN8*[⬆] The Court also notes that *Federal Rule of Civil Procedure 34(b)(2)(C)* requires that objections to discovery specifically state the basis that the discovery is being withheld. *See* *Fed. R. Civ. P. 34(b)(2)(C)* ("An objection must state whether any responsive materials are being withheld on the basis of that objection. An objection to part of a request must specify the part and permit inspection of the rest."). Further, it is possible for an objection to be waived if it is not timely raised by the party withholding the discovery. *Bailey v. City of Daytona Beach Shores, 286 F.R.D. 625, 628 (M.D. Fla. 2012)* (finding a party has waived a relevance objection where it was not initially asserted); *Bank of Mongolia v. M & P Glob. Fin. Servs., Inc., 258 F.R.D. 514, 518 (S.D. Fla. 2009)* (holding a defendants' untimely objections were waived).

throughout the entirety of the discovery **[*27]** proceedings on this specific issue:

Q. Until at least 2020, you have no ability to get to these files, is that what your testimony is?

A. Yes, Your Honor.

Q. Okay. And so you knew that fact on February 19th of this year, correct?

A. Yes.

Q. You knew that on March 14th of this year, correct?

A. Yes.

Q. And you knew that on April 8th of this year?

A. Yes.

ECF No. [236], at 127:5-14. Therefore, the Defendant readily admits that he knew it was "impossible" to comply with the Court's discovery order but chose not to notify the Court or the parties of this fact. Rather, the Defendant wasted both time and resources litigating this issue for the past seven months.

*Rule 37* provides in pertinent part that, "[i]f the motion [to compel] is granted—or if the disclosure or requested discovery is provided after the motion was filed—the court must, after giving an opportunity to be heard, require the party ... whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees." *Fed. R. Civ. P. 37(a)(5)* (emphasis added). However, "the court must not order this payment if ... (i) the movant filed the motion before attempting **[*28]** in good faith to obtain the disclosure of discovery without court action; (ii) the opposing party's nondisclosure, response, or objection was substantially justified; or (iii) other circumstances make an award of expenses unjust." *Id.* Nothing in the record demonstrates, however, that the Defendant's non-disclosure was substantially justified.

Accordingly, the Defendant cannot in good faith argue that there is "absolutely no basis" to issue sanctions against him. Discovery is meant to ensure that the parties have fair and timely access to the documents and facts needed to litigate their case. The Defendant has willfully obstructed this process. Accordingly, the Court agrees with Judge Reinhart's Order that attorneys' fees are warranted in this case. As to the award of attorneys' fees against the Defendant related to filing and litigating the Motion to Compel, the Order is affirmed.

**b. The Deemed Facts and the Striking of Defendant's Affirmative Defenses**

In his Objection, the Defendant also argues that the imposition of the Deemed Facts as a sanction violated the Defendant's due process rights and exceeded the Magistrate Judge's jurisdiction and authority for resolving a limited discovery [*29] issue. ECF No. [311], at 8. After a close review of the record revolving around the discovery issue at the center of these proceedings—the list of Defendant's Bitcoin Holdings—and a review of the sanctions imposed, the Court agrees with the Defendant that this sanction was improperly imposed.

*HN9*[↑] The broad discretion of the district court to manage its affairs is governed, of course, by the most fundamental safeguard of fairness: the *Due Process Clause of the Fifth Amendment*. *See Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee, 456 U.S. 694, 708, 102 S. Ct. 2099, 72 L. Ed. 2d 492 (1982)*. "To comply with the *Due Process Clause*, a court must impose sanctions that are both 'just' and 'specifically related to the particular 'claim' which was at issue in the order to provide discovery.'" *Serra Chevrolet, Inc. v. Gen. Motors Corp., 446 F.3d 1137, 1151 (11th Cir. 2006)*.

In *Serra Chevrolet, Inc. v. Gen. Motors Corp.*, the Eleventh Circuit Court of Appeals reversed the lower court's order in part, finding that the district had erred where it struck the defendant's affirmative defenses, and there was "no nexus" between the documents the district court ordered produced in its discovery orders and the court's sanction striking the defendant's affirmative defenses. *Serra Chevrolet, Inc., 446 F.3d at 1152*. There the Eleventh Circuit found that the defenses struck by the district court had no apparent relationship with the discovery abuse. *Id.*

As it relates to the Deemed Facts imposed [*30] by the Magistrate Judge in his Order, the Court agrees with the Defendant that those facts are not specifically related to the particular discovery abuse at issue. The discovery issue pending before the Magistrate Judge was the production of a list of the Defendant's Bitcoin Holdings on December 31, 2013. ECF No. [124], at 19-20; ECF No. [92-5], at 8. Moreover, the Magistrate Judge determined that the failure to provide the discovery and the Defendant's false testimony were relevant to the issue of sanctions. The Deemed Facts, however, are aimed at establishing the partnership that is alleged to have existed between David Kleiman and the Defendant and the determination of that partnership's property:

(1) Dr. Wright and David Kleiman entered into a 50/50 partnership to develop Bitcoin intellectual property and to mine bitcoin;

(2) any Bitcoin-related intellectual property developed by Dr. Wright prior to David Kleiman's death was property of the partnership;

(3) all bitcoin mined by Dr. Wright prior to David Kleiman's death ("the partnership's bitcoin") was property of the partnership when mined; and

(4) Plaintiffs presently retain an ownership interest in the partnership's bitcoin, and [*31] any assets traceable to them.

ECF No. [277], at 16. The Magistrate Judge noted that "the Court was ordering Dr. Wright to produce evidence to document the existence and extent of his bitcoin holdings, so that Plaintiffs could attempt to trace them through the master blockchain." *See* ECF No. [277] at 25. However, even if this Court were to permit the Deemed Facts to remain established, the discovery abuse remains "uncured" because the amount of bitcoin owned by the Defendant remains unknown, or at the very least, still at issue. Because the Court finds that the Deemed Facts do not specifically relate to the discovery issue that was pending before the Magistrate Judge, the Court agrees that the Deemed Facts imposed as a sanction was not proper.

Further, because the Court agrees with the Defendant that the Deemed Facts are improper, the striking of the affirmative defenses as a sanction must also be set aside. In his Order, the Magistrate Judge solely indicated that he was striking the Affirmative Defenses in order "[t]o conform to these established facts." ECF No. [277], at 16. Because the Court finds that the Deemed Facts were improper, it cannot permit the striking of affirmative defenses [*32] premised on the conformity of a sanction set aside.

Accordingly, the Order is vacated in part, to the extent that it sought to impose sanctions, which included the establishing of the Deemed Facts, and the striking of the Defendant's Affirmative Defenses.

Defendant also argues that there is no basis to impose sanctions because there is no record evidence that Plaintiffs have suffered any prejudice. ECF No. [311], at 11. Specifically, the Defendant argues that the Plaintiffs' inability to trace the Bitcoin is insufficient to establish prejudice. *Id. HN10*[↑] Sanctions permitted by *Rule 37(b)* "are usually only imposed" when "the party seeking sanctions was prejudiced by the violation." *Dude v. Cong. Plaza, LLC, 2018 U.S. Dist. LEXIS 123249, 2018 WL 4203888, at *5 (S.D. Fla. 2018)*, *report and recommendation adopted, Dude v. Cong.*

*Plaza. LLC, 2018 U.S. Dist. LEXIS 153000, 2018 WL 4203886 (S.D. Fla. 2018)* (citations omitted);

Here, the Court has no doubt that the Plaintiffs were prejudiced by the Defendant's antics. It is clear to the Court that the Defendant's conduct was anything but substantially justified or harmless. Defendant's conduct delayed and obstructed the discovery process of this case, wasted valuable time and resources in litigating this issue, and prevented the Plaintiff from obtaining evidence that the Magistrate Judge found relevant to the Plaintiffs' claims. Therefore, **[*33]** the Court rejects the Defendants' argument that no prejudice has been suffered by the Plaintiffs as a result of the Defendant's conduct. Such argument is entirely devoid of merit.

Finally, the Defendant argues that at minimum he "should have been afforded the opportunity to wait until [the date the bonded courier is set to come] to see if he receives the key slices to generate the list of his bitcoin holdings, which he could then provide to plaintiffs." ECF No. [311], at 13. Defendant contends that in the event this occurs, "even plaintiffs would have to concede that Dr. Wright's inability to do the impossible and comply with the discovery order caused them absolutely no prejudice." *Id.* Given the Defendant's many inconsistencies and misstatements, the Court questions whether it is remotely plausible that the mysterious "bonded courier" is going to arrive, yet alone that he will arrive in January 2020 as the Defendant now contends. However, given that the Defendant maintains that he should at least be afforded this opportunity, the Court will indulge him this much.

In light of the Defendant's representations that the bonded courier is scheduled to arrive in January 2020, the Court will **[*34]** permit the Defendant **through and including February 3, 2020**, to file a notice with the Court indicating whether or not this mysterious figure has appeared from the shadows and whether the Defendant now has access to the last key slice needed to unlock the encrypted file. In the event this occurs, and further if the Defendant produces his list of Bitcoin Holdings as ordered by the Magistrate Judge, then this Court will not impose any additional sanctions other than the ones discussed above.

In the event the bonded courier does not arrive, and the Plaintiffs are not given access to this information, which the Court has already founded directly relevant to their claims, the Court finds additional sanctions would be warranted. Specifically, pursuant *Rule 37(c)(1)(B)*, the Court will inform the jury of the Defendant's failure to

disclose the information sought by the Plaintiffs. *See Fed. R. Civ. P. 37(c)(1)(B)*. The Court will also extend the discovery period, upon motion by the Plaintiffs, in order to permit the Plaintiffs to conduct additional discovery beyond the presently set discovery cutoff period. Additionally, the Court will consider any renewed discovery requests that the Plaintiff may have.

## IV. CONCLUSION

Accordingly, it is **[*35]** **ORDERED AND ADJUDGED** as follows:

1. The Order, **ECF No. [277]**, is **AFFIRMED IN PART AND REVERSED IN PART**. The Order is **VACATED** solely as it relates to the imposition of the Deemed Facts and Striking of the Defendant's Affirmative Defenses. The Order is **AFFIRMED** as it relates to the award of reasonable attorneys' fees and costs against the Defendant related to litigation surrounding the Motion to Compel.

2. Defendant's Objection, **ECF No. [311]**, is **SUSTAINED IN PART AND OVERRULED IN PART** as articulated in this Order.

**DONE AND ORDERED** in Chambers at Miami, Florida on January 10, 2020.

/s/ Beth Bloom

**BETH BLOOM**

**UNITED STATES DISTRICT JUDGE**

---

**End of Document**

# *B&D Nutritional Ingredients, Inc. v. Unique Bio Ingredients, LLC*

United States District Court for the Southern District of Florida

February 13, 2017, Decided; February 13, 2017, Entered on Docket

CASE NO. 16-62364-CIV-COHN/SELTZER

**Reporter**

2017 U.S. Dist. LEXIS 20014 *; 2017 WL 8751754

B&D NUTRITIONAL INGREDIENTS, INC., a California corporation, Plaintiff, vs. UNIQUE BIO INGREDIENTS, LLC, d/b/a UNIQUE BIOTECH USA, a Florida limited liability company, JAIRO ESCOBAR, an individual, LUIS ECHEVERRIA, an individual, RATNA SUDHA MADEMPUDI, an individual, and UNIQUE BIOTECH LIMITED, an Indian corporation, Defendants.

**Subsequent History:** Magistrate's recommendation at, Costs and fees proceeding at *B&D Nutritional Ingredients, Inc. v. Unique Bio Ingredients, LLC, 2017 U.S. Dist. LEXIS 61140 (S.D. Fla., Apr. 20, 2017)*

Motion granted by, in part, Motion denied by, in part, Dismissed by, in part *B & D Nutritional Ingredients, Inc. v. Unique Bio Ingredients, LLC, 2017 U.S. Dist. LEXIS 69029 (S.D. Fla., May 4, 2017)*

Motion granted by, Objection overruled by *B&D Nutritional Ingredients, Inc. v. Unique Bio Ingredients, LLC, 2017 U.S. Dist. LEXIS 73808 (S.D. Fla., May 15, 2017)*

Motion granted by, in part, Sanctions disallowed by *B&D Nutritional Ingredients, Inc. v. Unique Bio Ingredients, LLC, 2017 U.S. Dist. LEXIS 79594 (S.D. Fla., May 24, 2017)*

Motion denied by *B&D Nutritional Ingredients, Inc. v. Unique Bio Ingredients, LLC, 2017 U.S. Dist. LEXIS 94642 (S.D. Fla., June 20, 2017)*

Motion granted by, in part, Motion denied by, in part, Request denied by *B&D Nutritional Ingredients, Inc. v. Unique Bio Ingredients, Inc., 2017 U.S. Dist. LEXIS 114840 (S.D. Fla., July 24, 2017)*

**Prior History:** *B & D Nutritional Ingredients v. Unique Bio Ingredients, 2017 U.S. Dist. LEXIS 220974, 2017 WL 8751751 (S.D. Fla., Jan. 25, 2017)*

# Core Terms

deposition, notice, scheduling, discovery, parties, protective order, cooperation, imposition of sanctions, impose sanctions, oral examination, opposing party, take place, deponent, desiring, fails

**Counsel:  [*1]** For B&D Nutritional Ingredients, Inc., a California corporation, Plaintiff, Counter Defendant: Jordan Lee Richards, Nolan Keith Klein, Law Offices of Nolan Klein, P.A., Ft. Lauderdale, FL.

For Unique Bio Ingredients, LLC, a Florida limited liability company, doing business as Unique Biotech USA, Jairo Escobar, an individual, Luis Echeverria, an individual, Ratna Sudha Madempudi, an individual, Unique Biotech Limited, an Indian corporation, Defendants: Richard A. Buckley, LEAD ATTORNEY, Law Offices of Buckley Correa, Weston, FL.

For William Van Dyke, Counter Defendant: Jordan Lee Richards, LEAD ATTORNEY, Law Offices of Nolan Klein, P.A., Ft. Lauderdale, FL.

For Jairo Escobar, an individual, Unique Bio Ingredients, LLC, a Florida limited liability company, Counter Claimants: Richard A. Buckley, LEAD ATTORNEY, Law Offices of Buckley Correa, Weston, FL.

**Judges:** BARRY S. SELTZER, United States Magistrate Judge.

**Opinion by:** BARRY S. SELTZER

# Opinion

## ORDER

**THIS CAUSE** has come before the Court pursuant to Plaintiff's Motion to Compel Depositions [DE 92], in which Plaintiff asks the Court to enter an order compelling Defendants Ratna Sudha Madempudi, Unique Bio Ingredients, LLC and Unique Biotech Limited to appear for deposition **[*2]** on a date and time agreed to by the parties. The parties have been unable

2017 U.S. Dist. LEXIS 20014, *2

to reach an agreement on a date for the depositions to take place. Plaintiff also asks the Court to allow the depositions to take place after the close of discovery (if necessary) and to preemptively deny a yet-unmade request by Defendants to extend the discovery deadline.

The Federal Rules of Civil Procedure and the Local Rules govern the scheduling of depositions, as well as the imposition of sanctions for failure to attend depositions. The Local Rules proclaim "the Court's expectation that counsel will seek to accommodate their fellow practitioners, including in matters of scheduling, whenever reasonably possible and that counsel will work to eliminate disputes by reasonable agreement to the fullest extent permitted by the bounds of zealous representation and ethical practice." Local Rules for the Southern District of Florida, Introductory Statement. The Local Rules also prescribe the method and timing of noticing depositions:

> **(h) Reasonable Notice of Taking Depositions**. Unless otherwise stipulated by all interested parties, pursuant to *Federal Rule of Civil Procedure 29*, and excepting the circumstances governed by *Federal Rule of Civil Procedure 30(a)*, a party desiring to take **[*3]** the deposition within the State of Florida of any person upon oral examination shall give at least seven (7) days' notice in writing to every other party to the action and to the deponent (if the deposition is not of a party), and a party desiring to take the deposition in another State of any person upon oral examination shall give at least fourteen (14) days' notice in writing to every other party to the action and the deponent (if the deposition is not of a party).
> Failure to comply with this rule obviates the need for protective order.

> Notwithstanding the foregoing, in accordance with *Federal Rule of Civil Procedure 32(a)(5)(A)*, no deposition shall be used against a party who, having received less than eleven (11) calendar days' notice of a deposition as computed under *Federal Rule of Civil Procedure 6(a)*, has promptly upon receiving such notice filed a motion for protective order under *Federal Rule of Civil Procedure 26(c)(1)(B)* requesting that the deposition not be held or be held at a different time or place and such motion is pending at the time the deposition is held.

*Local Rule 26.1(h)*, Local Rules for the Southern District of Florida. Finally, the Federal Rules of Civil Procedure

allow for the imposition of sanctions, on motion, if "a party or a party's officer, director, or managing agent — or a person designated **[*4]** under *Rule 30(b)(6)* or *31(a)(4)* — fails, after being served with proper notice, to appear for that person's deposition." *Fed. R. Civ. P. 37(d)(1)(A)*.

Although the Court expects that the parties will cooperate in scheduling one another's depositions, it cannot compel such cooperation or impose sanctions for any party's failure to do so. When such cooperation proves impossible, a party seeking to depose an opposing party may properly notice the deposition and then, if necessary, move to compel and/or to impose sanctions in the event that the opposing party or its representative fails to appear or obtain a protective order. In addition, inasmuch as the depositions have not yet been scheduled, the Court cannot determine whether additional time (beyond the discovery cut-off) is warranted to complete the depositions. Finally, the Court cannot decide any request to enlarge discovery that has not yet been made. Accordingly, it is hereby

**ORDERED AND ADJUDGED** that Plaintiff's Motion to Compel Depositions [DE 92] is **DENIED**.

**DONE AND ORDERED** in Chambers, Fort Lauderdale, Florida, this 13th day of February 2017

/s/ Barry S. Seltzer

BARRY S. SELTZER

United States Magistrate Judge

---

**End of Document**

# *Tr Reddy v. Bisaria*

United States District Court for the Southern District of Florida

July 27, 2011, Decided; July 27, 2011, Entered on Docket

CASE NO. 10-80725-CIV-MARRA/JOHNSON

**Reporter**

2011 U.S. Dist. LEXIS 168807 *

TR REDDY, a Georgia Resident, Plaintiff, vs. ATUL BISARIA and MIHU A. BISARIA, Defendants,

**Prior History:** *TR Reddy v. Bisaria, 2010 U.S. Dist. LEXIS 131456 (S.D. Fla., Dec. 10, 2010)*

## Core Terms

discovery, depositions, parties, responses, discovery request, defense counsel, scheduled, sanctions, expenses, attorney's fees, over-due, notice

**Counsel:** **[*1]** For TR Reddy, a Georgia resident, Plaintiff: Santiago A. Cueto, Cueto Law Group, P.L., Coral Gables, FL.

For Atul Bisaria, Defendant: Keith Thomas Grumer, LEAD ATTORNEY, KATZ BARRON, Fort Lauderdale, FL; Maidenly Macaluso, LEAD ATTORNEY, Davis Goldman, PLLC, United Sta, Miami, FL.

For Mihu Bisaria, both Florida residents, Defendant: Keith Thomas Grumer, LEAD ATTORNEY, KATZ BARRON, Fort Lauderdale, FL.

For Mihu Bisaria, both Florida residents, Counter Claimant: Keith Thomas Grumer, LEAD ATTORNEY, KATZ BARRON, Fort Lauderdale, FL.

For Atul Bisaria, Counter Claimant: Keith Thomas Grumer, LEAD ATTORNEY, KATZ BARRON, Fort Lauderdale, FL; Maidenly Macaluso, LEAD ATTORNEY, Davis Goldman, PLLC, United Sta, Miami, FL.

For TR Reddy, a Georgia resident, Counter Defendant: Santiago A. Cueto, Cueto Law Group, P.L., Coral Gables, FL.

**Judges:** LINNEA R. JOHNSON, UNITED STATES MAGISTRATE JUDGE.

**Opinion by:** LINNEA R. JOHNSON

## Opinion

**ORDER**

**THIS CAUSE** is before the Court on Plaintiff's Motion to Compel Defendants' Responses to Discovery and Appearance at Deposition (D.E. #24). The matter is fully briefed and ripe for review. Having given careful consideration to the issues and arguments raised in the Motion and the related Response Brief, **[*2]** the Court, for the reasons which follow, grants Plaintiff's Motion.

Plaintiff, TR Reddy ("Reddy" or "Plaintiff") filed the instant action against Defendants Atul Bisaria and Mihu Bisaria for money owed on four promissory notes. By this Motion, Plaintiff moves for an order compelling Defendants to respond to deposition notices and discovery requests, which at the time the Motion was filed, were un-responded to. Plaintiff also moves for *Rule 37* sanctions against Defendants for their failure to appear at their scheduled depositions and failure to respond to the outstanding discovery requests.

The essential facts are not in dispute. On April 7, 2011 Plaintiff propounded a discovery package on both of the Plaintiffs consisting of interrogatories, requests for production and admission requests. Under the Federal Rules answers to these Requests were due on May 7, 2011. On May 6, 2011, one day before the answers were due, Defense counsel sought and obtained agreement from Plaintiff's counsel for a two-week extension of time in which to respond to the pending discovery requests. Thus, pursuant to agreement of the parties, the answers to the discovery were due on May 23, 2011. Meanwhile, previously, **[*3]** on May 3, 2011, counsel for the Plaintiff and Defendants conferred and agreed upon deposition dates for the Defendants, which were confirmed and scheduled to take place June 1 and 2, 2011.

On or about May 27, 2011, after the May 23, 2011 discovery due-date had passed, Plaintiff's counsel contacted Defense counsel's office to inquire about the over-due discovery. Plaintiff's counsel was unable to

2011 U.S. Dist. LEXIS 168807, *3

reach defense counsel directly, but was told by his office staff that they were aware the discovery was overdue and were awaiting instructions from defense counsel. Plaintiff's counsel followed-up the phone call to defense counsel's office with an e-mail that same date directed to Defendants' counsel in which he inquired as to the date he could expect the overdue discovery responses.

In an e-mail response sent by defense counsel on Sunday, May 29, 2011, which because of the intervening three-day Memorial Day weekend Plaintiff's counsel did not receive until Tuesday, May 31, 2011, defense counsel informed Plaintiff's counsel that Defendants had not yet completed the over-due discovery and would not be available to attend their depositions scheduled to commence the following day. Defense counsel **[*4]** then offered to reschedule the depositions later in the month once Defendants returned from their unexpected trip to India and defense counsel returned from his previously planned family vacation. Plaintiff's counsel rejected Defendants' counsel's offer to re-schedule the deposition as well as Defendants' counsel's request to extend the discovery response date for a second time, and filed the instant Motion to Compel seeking an order compelling Defendants' appearance at deposition, compelling Defendants' responses to the over-due discovery requests and imposing sanctions on Defendants in the form of an award to Plaintiff of his attorneys' fees and costs incurred incident to the filing of the subject Motion.

The Court begins with the basic principle that *Rule 37 of the Federal Rules of Civil Procedure* which governs discovery and depositions in federal court allows any party "on notice to other parties and all affected persons, ... [to] move for an order compelling disclosure or discovery." *Id.* District courts are entitled to broad discretion in managing pretrial discovery matters to ensure that cases move to "a reasonably and timely conclusion" with as minimal a "waste of judicial and private resources" as possible. *Perez v. Miami-Dade County, 297 F.3d 1255, 1263 (11th Cir. 2002)*(internal citations **[*5]** and quotations omitted). To this end, discovery is expected to be accomplished voluntarily with minimal judicial intervention. *See Hunter's Ridge Golf Co. v. Georgia-Pacific Corp., 233 F.R.D. 678, 680 (M.D. Fla. 2006)*(reminding parties that "[t]he overall purpose of discovery under the Federal Rules is to require the disclosure of all relevant information so that the ultimate resolution of disputed issues in any civil action may be based on a full and accurate understanding of the true facts, and therefore embody a fair and just result."); *see also U.S. v. Pepper's Steel &*

*Alloys, Inc., 132 F.R.D. 695, 696 (S.D. Fla. 1990)*(reminding the parties that "discovery should be conducted extrajudicially"). Should judicial intervention be required, *Rule 37* provides a choice of remedies to the aggrieved. Relevant in this instance is *Rule 37(b)(2)(A)*, which provides that "[i]f a party or a party's officer, director or managing agent-or a witness designated under *Rule 30(b)(6)* or *31(a)(4)*-fails to obey an order to provide or permit discovery ... the court where the action is pending may issue further just orders ... including treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination." *Id. Rule 37(b)(2)(C)* expands on the above by providing that, "[i]nstead of or in addition to the orders above, the court must order the disobedient party, the attorney **[*6]** advising that party, or both to pay reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." *Id.*

The sanctions listed above and provided for by *Rule 37* are not mutually exclusive. Courts are not limited to these sanctions and have broad discretion in imposing consequences for abusive discovery practices. *See National Hockey League v. Metropolitan Hockey Club, Inc., 427 U.S. 639, 96 S. Ct. 2778, 49 L. Ed. 2d 747 (1976)*; *Guidry v. Continental Oil Co., 640 F.2d 523, 533 (5th Cir. 1981), cert. denied, 454 U.S. 818 (1982)*; *Dorey v. Dorey, 609 F.2d 1128, 1135 (5th Cir. 1980)*. The extensive sanctions available to courts under the Rules for failure to comply with discovery orders and/or duly issued subpoenas are necessary to compensate the court and parties, facilitate discovery, and deter abuse of the discovery process.[1] Implicit in the Rules is the

---

[1] As stated by the Supreme Court, even the "most severe in the spectrum of sanctions provided by statute or rule must be available to the district court in appropriate cases, not merely to penalize those whose conduct may be deemed to warrant such a sanction but to deter those who might be tempted to such conduct in the absence of such deterrent." *National Hockey League, 427 U.S. at 643*. *Accord Gratton v. Great American Communications, 178 F.3d 1373, 1374-75 (11th Cir. 1999)*("*Rule 37* sanctions are intended to prevent unfair prejudice to the litigants and insure the integrity of the discovery process."); *BankAtlantic v. Blythe Eastman Paine Webber, Inc., 130 F.R.D. 153, 154 (S.D. Fla. 1990)* ("Enforcement of the sanctions order is necessary to serve the punishment and deterrence goals of the rule and to vindicate the integrity of the Court and discovery process"). Furthermore, sanctions should insure that the party complying with discovery is not prejudiced. *See Black Panther Party v.*

2011 U.S. Dist. LEXIS 168807, *6

recognition that in cases of discovery abuse, the non-offending party should be compensated by the non-complying individual and/or their counsel, if circumstances warrant, for the added expenses caused by the violation.

In the instant case, each Defendant was served with Discovery Requests which, upon agreement of the parties, required responses to be served no later than May 23, 2011. Defendants do not dispute that at the time of [*7] the filing of Plaintiff's Motion on May 31, 2011, they had not yet served their required responses. Instead, Defendants argue they were somehow excused from having to serve timely responses to said Requests due to "ongoing settlement discussions that, if successful, would have rendered the discovery moot." *See* Defs' Resp. (D.E. #25, p. 1).

The Court agrees with Plaintiff that Defendants have presented no valid justification for failing to respond to the subject discovery requests. Defendants fail to cite any case law and independent research has uncovered none to support their claim that settlement discussions effectively "stay" a party's obligation to respond to discovery. The time limits provided for in the Federal Rules of Civil Procedure and the Local Rules of this Court are not advisory in nature. Parties and non-parties alike are expected to be familiar with the Rules governing written discovery and to strictly comply with all time requirements set forth therein.

The same is true with regard to the Rules governing depositions. Again, Defendants do not dispute that the depositions noticed for June 1 and 2, 2011 were duly scheduled and confirmed nor that Plaintiff's attorney was [*8] first notified of Defendants' "inability" to attend the depositions a mere one day before the depositions were scheduled to commence. Defendants' stated reason for being unable to attend the depositions, namely, Mr. Bisaria's "unforeseen trip" to India, is unjustifiable. All the more astounding is Defendants' untenable defense of their position as illustrated by statements in their Response Brief such as "For reasons unknown, [Plaintiff's counsel] did not respond to the offer to reschedule the depositions, and instead filed the instant Motion. ..." and "In light of the foregoing communications, in which [Defendants' counsel] offered to reschedule the discovery but was met by silence, the Certificate of Good Faith filed by Plaintiff's counsel was

*Smith*, 661 F.2d 1243, 1255, 213 U.S. App. D.C. 67 (D.C. Cir. 1981), *vacated and remanded on other grounds*, **458 U.S. 1118 (1982)**.

filed in bad faith." *See* Defs' Resp. (D.E. #25, p.2).

What Defendants fail to realize is that Plaintiff's counsel acted reasonably. The only thing unreasonable here is Defendants' belief that they were somehow free to ignore properly served discovery requests and duly noticed depositions without first obtaining a court order excusing them from their obligations. At the very least Defendants were obligated to file a motion for protective order [*9] or some other pleading with the court requesting that they be excused. Even then, the law is clear that the mere filing of a motion for protective order does not operate as an automatic stay of a scheduled deposition. *Sutherland v. Mesa Air Group, Inc., 2003 U.S. Dist. LEXIS 28816, 2003 WL 21402549, *5, n.10 (S.D. Fla. 2003)*(and cases cited therein)(noting that the filing of a motion for protective order to stay depositions does not relieve the moving party of his obligation to attend the depositions; only when the district court grants the motion does the obligation to comply with a notice of deposition dissipate) and L.R. 26.1.H.3, Local Rules for the Southern District of Florida.

In short, Defendants' belief that they were somehow relieved of their discovery obligations because of earlier settlement discussions and their unilateral action in cancelling their depositions a mere one day before they were scheduled to commence demonstrates a cavalier view of the Court and the Rules governing proceedings in the Court the undersigned frankly finds astonishing. *Rule 37(b)(2)(C)* is clear and provides that "the court *must* order the disobedient party, the attorney advising that party, or both to pay reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other [*10] circumstances make an award of expenses unjust." *Id.* In the instant case the Court has not been provided with any substantial justification for Defendants' failure to comply with their discovery obligations or been presented with any facts that would make an award of expenses unjust. Accordingly, the Court finds Plaintiff's Motion well-taken and orders Defendants to serve responses to the subject discovery within ten (10) days from the date hereof, appear for deposition at a mutually agreeable time and date no later than twenty (20) days from the date hereof (unless otherwise agreed to by the parties), and pursuant to *Fed. R. Civ. P 37*, reimburse Plaintiff his attorney's fees and costs incurred incident to the filing of the Motion as sanctions.

As for determining the amount of fees and costs incurred, counsel for the parties are ordered to, within seven (7) days from the date hereof, confer in an

2011 U.S. Dist. LEXIS 168807, *10

attempt to resolve by agreement the issue as to amount. If, after the seven (7) day period has elapsed and there has been no agreement reached, Plaintiff shall have until June 8, 2011 to file an affidavit detailing the attorney's fees and costs he incurred incident to this issue. If Defendants wish to dispute **[*11]** the amount, they may respond and file their objections to Plaintiff's affidavit within five (5) days of receipt of same. Plaintiff shall thereafter have two (2) days from receipt of such response in opposition in which to file any desired reply.

In accordance with the above and foregoing, it is hereby,

**ORDERED AND ADJUDGED** that Plaintiff's Motion to Compel Defendants' Responses to Discovery and Appearance at Deposition (D.E. #24) is **GRANTED** in accordance with the terms herein.

**DONE AND ORDERED** this 27th day of July, 2011, in Chambers, at West Palm Beach, Florida.

/s/ Linnea R. Johnson

LINNEA R. JOHNSON

UNITED STATES MAGISTRATE JUDGE

**End of Document**